David L. HEILMAN and E–C Tape
Service, Inc., a Wisconsin
Corporation, Plaintiffs,

v.

Griffin B. BELL, Attorney General of the United States of America, his agents, servants, employes, attorneys, successors and all those persons in active concert or participation with them, Defendants.

Civ. A. No. 75–C–117.

United States District Court,
E. D. Wisconsin.

July 14, 1977.

Bruce F. Ehlke and David B. Gaebler, Madison, Wis., for plaintiffs.

William J. Mulligan, U. S. Atty., by William E. Callahan, Jr., Asst. U. S. Atty., Milwaukee, Wis., Robert P. Weidner, Government Regulations and Labor Section, Crim. Div., Dept. of Justice, Washington, D. C., for defendants.

REYNOLDS, Chief Judge.

In this action, plaintiff duplicators seek the following relief: a declaration that 17 U.S.C. §§ 1(e), 101(e), and 104 are inapplicable to duplicators of songs fixed prior to February 15, 1972, who tender the two-cent royalty to the composition copyright holder; a declaration that an interpretation of those statutes which make the plaintiffs criminally liable for duplicating sound recordings of songs fixed prior to February 15, 1972, renders the statutes unconstitutional; and an injunction restraining the defendant U. S. Attorney General, his agents and successors, from seizing the records and tapes of the plaintiffs and from prosecuting the plaintiffs for alleged violations of 17 U.S.C. §§ 101(e) or 104. Jurisdiction is present under 28 U.S.C. §§ 1331 and 2201. The matter is before the court on cross motions for summary judgment. For the reasons which follow, the defendants' motion will be granted and the plaintiffs' motion will be denied.

Both the facts in this matter and the position of the Court on the legal issues raised herein have already been fully detailed in the decision and order of this Court rendered April 28, 1975. At that time, this Court denied plaintiffs' motion for a temporary restraining order and a preliminary injunction and plaintiffs' request for the convening of a three-judge court. See *Heilman v. Levi*, 391 F.Supp. 1106 (E.D.Wis.1975). There this court relied on four circuit cases [1] and determined that tape duplicators are not entitled to avail themselves of the compulsory licensing provision of 17 U.S.C. § 1(e) because such duplication does not constitute a "similar use" of the composition and therefore their activities constitute infringement of the composition copyright. The Court also determined that 17 U.S.C. § 101(e), which imposes criminal sanctions pursuant to 17 U.S.C. § 104 as to cases of "willful infringement for profit," embraces tape duplicators who tender the compulsory licensing fee. Furthermore, the Court concluded that the meaning of "unauthorized" as used in § 101(e) is not so uncertain as to render the statute unconstitutionally vague, and that the public notice given the plaintiffs in January of 1975 through the trade press of the prospective operation of the defendants' decision to prosecute tape duplicators did not violate any of plaintiffs' due process rights.

The Court is mindful that the mere fact that a plaintiff's motion for a preliminary injunction is denied does not in itself entitle the defendant to summary judgment. See 6 Part 2 Moore's Federal Practice ¶ 56.-17[30] (1976). However, the Court in its earlier decision made an exhaustive study of the development, amendments, and interpretation of the federal copyright statutes

1. *Fame Publishing Co., Inc. v. Alabama Custom Tape, Inc.*, 507 F.2d 667 (5th Cir. 1975), cert. denied, 423 U.S. 841, 96 S.Ct. 73, 46 L.Ed.2d 61 (1975); *Jondora Music Publishing Co., Inc. v. Melody Recordings, Inc.*, 506 F.2d 392 (3rd Cir. 1974), cert. denied, 421 U.S. 1012, 95 S.Ct. 2417, 44 L.Ed.2d 680 (1975); *Edward B. Marks Music Corp. v. Colorado Magnetics, Inc.*, 497 F.2d 285 (10th Cir. 1974), cert. denied, 419 U.S. 1120, 95 S.Ct. 801, 42 L.Ed.2d 819 (1975); and *Duchess Music Corp. v. Stern*, 458 F.2d 1305 (9th Cir. 1972), cert. denied, 409 U.S. 847, 93 S.Ct. 52, 34 L.Ed.2d 88 (1972).

involved. An examination of plaintiff Heilman's affidavit and the various exhibits and briefs filed in support of and in opposition to the motions for summary judgment indicate that there has been no change in the facts of this case nor in the applicable law which would warrant a change in the Court's position. In fact, recent developments in the law with regard to cases seeking to enjoin the Attorney General from prosecuting tape duplicators for copying recordings fixed prior to February 15, 1972, have reinforced the defendants' position. See *International Tape Distributors, Ltd. v. Levi*, 188 U.S.P.Q. 539 (D.D.C.1975); *Stereo Tape Associates v. Levi*, No. G 75–167 (W.D.Mich., May 14, 1976); *Stereo Tape Associates v. Levi*, No. 5–70687 (E.D.Mich., April 7, 1976); *E–C Tape, Inc. v. Kelly*, 412 F.Supp. 245 (N.D.Ill.1975); and *Gramuglia v. Levi*, No. 75–CV–549 (N.D.N.Y., July 13, 1976).

At the preliminary injunction stage of this litigation, there were no genuine issues of material fact, nor are any such factual disputes presented at this time that would preclude the granting of summary judgment. See Rule 56(c), Fed.R.Civ.P. Then, as now, plaintiffs admitted copying recordings fixed prior to February 15, 1972, without authorization of the composition copyright holder.

■ The plaintiffs' principal argument at this time is that the decisions of the four circuits previously relied upon—*Fame, Jondora, Marks,* and *Duchess* (cited in footnote "1")—are in error, and as they are not binding on this court, plaintiffs urge the Court to re-evaluate its prior position. Plaintiffs argue that they are not tape pirates in the usual sense of the term because they copy only older record selections, many of which are commercially unavailable, and because they offer the records in an anthology form centered around a particular theme. Plaintiffs contend that because they offer the customer something new, and because their customers are interested in the anthology rather than the individual selection, they are not depriving other manufacturers of a portion of their profit on successful records. Even assuming that the customer is more interested in the anthology than in the individual selections, and that in fact other manufacturers are not deprived of profits because the records are commercially unavailable otherwise, plaintiffs have misstated the issue. The issue is not whether the plaintiffs are original or creative in their arrangement of record anthologies, nor whether plaintiffs directly or indirectly compete with other recording companies. The issue is whether the plaintiffs in the first instance have the right to copy sound recordings fixed prior to February 15, 1972, without the authorization of the composition copyright holder. This Court finds no relevance to the plaintiffs' later arrangement of the duplicated songs. Originality of the anthologized arrangement, that is, of the sequence of the various recordings, does not negate the requirement of first obtaining authorized permission from the copyright holder before duplicating the recording. Whether, once the anthologizer has obtained the requisite permission to copy the various recordings contained in the anthology, he is then entitled to copyright protection as to the original arrangement of the anthology is a separate matter which need not be considered here.

Secondly, plaintiffs have argued that this Court's interpretation of 17 U.S.C. § 1(e), the compulsory licensing section thwarts the purpose of compulsory licensing by fostering monopoly in the recording industry. The granting of any copyright does create a limited monopoly which is designed to benefit long-term competitive interests. One commentator has remarked:

" * * * The Constitution's authorization to Congress to grant patent and copyright protection represents a judgment that, although short-range competitive interests would benefit from immediate and free public access to technological and artistic innovation, to permit such access would destroy incentive to innovate; new products and works would not be introduced into the market and consequently the long-range competitive situation would decline. The patent and copy-

right statutes, each in its own way, strike a balance between these long- and short-range competitive interests. * * * "[2]

Accordingly, the compulsory license provision has been interpreted to permit numerous artistic interpretations of a single written composition, but not to permit the use of a recording of the composition. See *Shaab v. Kleindienst,* 345 F.Supp. 589, 590 (D.D.C.1972); *Jondora Music Publishing Co., Inc. v. Melody Recordings, Inc.,* 506 F.2d 392, 395 (3rd Cir. 1974), cert. denied 421 U.S. 1012, 95 S.Ct. 2417, 44 L.Ed.2d 680 (1975).

 Along the same lines, the plaintiffs argue that because frequently the large record companies own the publishing houses which have control of the composition copyright, impermissible tying arrangements result akin to those condemned under antitrust laws. Plaintiffs assert that due to an oligopolistic recording industry, the uncopyrighted product—the performance—is tied to the copyrighted product—the composition. This argument is answered in the same way as the prior argument: new renditions of the copyrighted composition are permitted, but mere copies of past performances are prohibited. There is no analogy to impermissible tying. To the extent that the plaintiffs attack the recording and publishing industries as oligopolistic, the proper remedy lies in an action for violations of the antitrust laws.

Thus, the plaintiffs have advanced no arguments or facts which have persuaded this Court to depart from its earlier announced conclusion that as a matter of law plaintiff duplicators may not avail themselves of the compulsory licensing provision of 17 U.S.C. § 1(e) to avoid civil or criminal sanctions under the Copyright Act, and that criminal sanctions imposed pursuant to 17 U.S.C. §§ 101(e) and 104 embrace tape duplicators who tender the compulsory licensing fee. Plaintiffs admit that they were given public notice in January of 1975 via the trade press of the defendants' decision to prosecute tape duplicators. The defendants' decision to prosecute operated prospectively and was based on the unanimous interpretation of the four circuit courts of appeal which considered the question of the availability of 17 U.S.C. § 1(e) to tape duplicators. The defendants have not violated any of the plaintiffs' constitutional rights.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment be and it hereby is granted.

IT IS FURTHER ORDERED that plaintiffs' motion for summary judgment be and it hereby is denied.

---

**2.** Goldstein, "The Competitive Mandate: From Sears to Lear," 59 Calif.L.Rev. 873 (1971).